## PRICE and WAIT *v.* HARNED *et al.*

Where in a proceeding by mandamus, the order for the writ, and the writ itself, are issued in vacation, and not during the session of, and by, the court as such; and the proceeding is not carried on in the name of the state; and where the writ recites no part of the inducement, or that which must justify the command, the proceedings are erroneous.

The writ of mandamus should not issue, until there is some wrong on the part of the tribunal, corporation, board, or person, to be commanded; in other words, the party to be compelled, should have failed and refused, to do that which it was clearly and certainly his duty to do, from his office, trust, or station.

Where, under an act of the legislature, approved January 24, 1855, providing for the relocation of the county seat of Keokuk county, an election was held, for the purpose of determining whether the county seat should be removed from Lancaster to Sigourney, and the county canvassers, found that a majority of the votes cast were in favor of Lancaster; and where two citizens of said county, and who voted at said election, claimed that the vote had not been properly canvassed—that a majority of the votes were in fact cast for Sigourney—and that the board of canvassers had improperly excluded the returns from four townships, which, if counted, would show a majority for Sigourney; and thereupon, said two citizens, for the purpose of compelling the removal of the county offices to Sigourney, presented their sworn information to the judge of the District Court of that county, in vacation, praying a writ of mandamus, commanding the said county officers to make such removal; and where the said judge made an order, authorizing the clerk of the District Court, to issue the alternative writ, to said officers, commanding them to remove to Sigourney, or show cause on the first day of the next term of said court, which writ was issued; and where at the next term of said court, the information was amended, so as to set forth the facts, as plaintiffs claimed, with regard to the county canvass of the votes, and the alternative writ was also amended, so as to include an order on the county judge and canvassers, to count the votes from the townships said to be excluded; and where the defendants appeared, and demurred to so much of the writ as claimed a removal of the county seat, because of the incorrectness of the county canvass, or because the actual vote was different from that declared, and also answered, showing the election and the result as declared; and where the record disclosed, that the demurrer was overruled, and the defendants declining to plead over, the plaintiffs moved for a peremptory mandamus, based upon the information, writ and answer without any other evidence, commanding the county judge to so amend his record as to show the true state of the majority vote and the said county officers to remove their offices, &c., to the town of Sigourney, on the 15th of March next, which was granted;

*Held,* 1. That the peremptory writ did not follow the alternative.

2. That the county judge could not be commanded to amend his record, until, either in connection with the former canvassers, or others to be selected, or in some other method, the returns had been re-examined, and the result declared, so that he could make his amendment therefrom.

3. That the peremptory writ having been ordered without any other evidence or records, than that contained in the information, writ, answer, and demurrer, was unwarranted.

4. The writ of mandamus could properly issue to compel the board of canvassers to correct the mistake, and do their duty; and upon such correction, if the majority was in favor of Sigourney, the county officers, upon a failure so to do, could be compelled by mandamus, to remove their offices to that place.

*Appeal from the Keokuk District Court.*

ON the 24th of January, 1855, an act was passed, providing for the relocation of the county seat of Keokuk county. By this act, a vote was to be taken on the first Monday in August, 1855, in the several places of holding elections in said county, for the purpose of determining whether the county seat should be removed from Lancaster to Sigourney. The vote was to be taken, and returned by the judges of the election, and when returned, was to be canvassed and entered by the county judge upon his election book, under the same rules and restrictions as in other elections. If a majority of the votes cast, was in favor of removing the county seat to Sigourney, then the county officers were to remove their offices, and the books, papers, records, and other property belonging thereto, to that place, so soon as suitable rooms could be procured. A vote was taken, and the returns made to the proper county office. The county judge, taking to his assistance two justices of the peace, canvassed the votes, and they found, according to such canvass, that a majority of the votes cast was in favor of Lancaster, and he entered an abstract thereof, upon his election book. It appears that the plaintiffs, being citizens of the county, and having voted at said election, claimed that this vote had not been properly canvassed; that a majority of the votes was, in fact, cast for Sigourney; and that the board of canvassers had improperly and illegally, excluded the returns from four townships

of the county, and which votes, if counted, would show a majority in favor of Sigourney; and they, therefore, claimed that the county officers should remove their offices to Sigourney. For the purpose of compelling this removal, the plaintiffs presented their sworn information to the Hon. Wm. H. Seevers, judge of the District Court of that county, in vacation, praying a writ of mandamus, commanding the said Harned and his co-defendants (who are the county officers of said county), to make such removal. The District Judge made an order accordingly, authorizing the clerk of the District Court, to issue the alternative writ, directed to said county officers, commanding them to remove to Sigourney, or show cause on the first day of the next term of said court. This writ was accordingly issued. At the said term, it appears, that the information was amended, so as to set forth the facts, as plaintiffs claimed, with regard to the county canvass of the votes; and the alternative writ was amended in like manner, so as to include an order on the county judge and canvassers to count the votes from the townships said to be excluded. To this proceeding, defendants appeared on the first day of said court, and answered. In their answer, this election, and the result, as declared by the canvassers, was set forth; and they also demurred to so much of the information or writ, as set up and claimed a removal of the county seat, because of the incorrectness of the county canvass, or because the actual vote was different from that declared. The record then discloses, that the cause came on to be heard on the defendants' demurrer, and on the answer; that the demurrer was overruled; and that defendants, declining to plead further, plaintiffs moved for a peremptory mandamus, based upon the information, writ, and answer, which was granted, commanding the county judge to so amend his record as to show the true state of the majority vote, and the said county officers to remove their offices, &c., to the town of Sigourney, on the 15th day of March next. From this order, defendants now appeal.

*J. C. Hall,* for the appellants, argued, 1. That Wait and Price cannot prosecute this application, they being mere private citizens, and having no interest in the subject matter, only in connection with the whole people. *Sanger* v. *County,* 25 Maine, 291; *The People* v. *Tracy,* 1 Denio, 617; *Gillespie* v. *Wood,* 4 Humph. 437; *State* v. *Justices of Moore,* 2 Iredell, 430. This principle is fully recognized by this court, in *Chance* v. *Temple, School Fund Commissioner, ante,* 179; and in *Scott* v. *Commissioners to relocate the seat of government, ante,* 170. A prosecution of this kind should be in the name of the state, and upon the relation of some public officer. *Sanger* v. *County,* 25 Maine, 291. 2. The writ was issued by an order of the judge in vacation; whereas, the Code contemplates that the authority shall emanate from the court alone. Code, title *Certiorari.* 3. The writ will only be issued against a party who refuses to do a plain and palpable duty, enjoined upon him by law, and which especially pertains to his office, place, or position. *Kendall* v. *United States,* 12 Peters, 629. It can hardly be contended, that the county judge, treasurer, sheriff, and clerk, can alter the declared result of an election, or that the judge alone can change the result, after it is found, declared, and recorded by the authorized board of canvassers. This doctrine is too dangerous and novel to be entertained. Then, a mandamus cannot create the power, and at the same time enforce the duty. *Gillespie* v. *Wood,* 4 Humph. 437; 3 Brevard, 264, 491; *Dixon* v. *Judge re,* 4 Miss. 286; *People* v. *Stevens,* 5 Hill, 619; *Chance* v. *Temple, ante,* 179. It follows, that a mandamus directed to the county officers, for the purpose of forcing them to remove their offices, cannot be granted, unless it was clearly and palpably their duty to remove, and they refuse to remove. It cannot be awarded, where there is any fair doubt as to the duty to be performed. The recorded and declared result of the election, as evidenced by the record, must control these officers; that, to them, is authority. The law has not made it a part of their duty, to count the votes or change the record. The result of the election having been ascertained, in accordance with the

forms of the law, that result is binding upon the officers, and they have no power to change it. Under the decision made by this court, in *Chance* v. *Temple*, the case at bar does not possess one solitary requisite made essential for the suing out of a mandamus. The application is sued out by the wrong party, against the wrong party, allowed by an unauthorized authority, and finally adjudged without jurisdiction. 10 Wend. 25; *The People* v. *Supervisors of Fulton*, 14 Barbour, 54; 1 Hill, 362; 12 John. 414.

*D. Rorer*, for the appellees, argued: 1. The majority vote, and not the canvassing and recording, vests the right. Statute 1855, 208, § 1; *Madison* v. *Marbury*, 1 Cond. Rep. 267. The appointment confers the office; the commission is the evidence. 2. The county judge was to canvass and count the votes (Stat. 1855, 208, § 3), and is a ministerial officer, who had no discretion to cast out polls, but must count and record; and the answer says, they were duly returned from all the townships. 7 Johns. 549; 3 Porter, 452; 5 Texas, 479; 14 Peters, 479-515; 12 Peters, 524; 6 How. 100. 3. A partial discharge of this duty, as shown by the answer, is not a sufficient showing against the peremptory writ. 12 Johnson, 414; 2 Comstock, 489. 4. Any person may act as relator, where the matter is of public interest, and need have no other interest themselves, than that in common with other citizens. 3 Porter, 452; 11 Ill. 202; 3 How. 100; 2 Carter, 423.; Code, § 1678; 3 Cal. 323; 2 do. 165; and the name of the state need not be used. 2 Carter, 423; Code of Iowa, title Parties to Actions. This is a civil proceeding, for a civil remedy (2 Carter, 423); and the pleadings must be by petition and answer. Code, title Pleading. 6. The writ is not required to contain the cause of action; the law says, the *information* shall be answered, and that under oath. See Code, page 300. The answer *purports* to be an answer to the *petition*, not to the writ; and so does the *demurrer* purport to be a demurrer to the petition, or information. Now it is too late to say, we have wrong parties, after trial and appeal, and no objection taken

below. The demurrer admits the truth of the petition, and the answer does not contravert one allegation thereof, so there was no replication required. The answer is not sworn to. If the law requires the writ to contain the complaint, then it also requires the writ to be *answered;* it has not been, and the judgment below should be affirmed; but if the law requires the *information* to be answered, then the answer is evasive and insufficient, and the demurrer admits the information to be true. As to the writs issuing in vacation, it is no objection, for defendants have appeared and answered; and if there had never been any writ, the appearance is sufficient.

WRIGHT, C. J.—We had occasion at the last term, in the case of *Chance* v. *Temple, as School Fund Commissioner, ante,* 179, to examine the law regulating the writ of mandamus, and to lay down, quite fully, our views of the practice in relation thereto. This proceeding, under the rules there declared, is, in many respects, defective. The order for the writ, and the writ itself, were issued in vacation, and not during the term of, and by the court, as such. The proceeding is not carried on, in the name of the state. The writ itself recites no part of the inducement, or that which must justify the command, as was there held to be necessary. In these, and other particulars, this proceeding would be erroneous, if the views taken of these questions in the case referred to, be correct. The appellees claim, however, that these and similar defects, were cured by appearance; and that our Code has changed entirely, the strictness required under the English practice, in relation to this writ, and as practiced in many of our sister states; and that so much of the former ruling, as does not recognize these modifications and changes, is incorrect, and we are urged to re-examine the positions there assumed, and, in effect, to overrule them. We see no reason to change substantially the views there announced. And especially so, as in matters of practice, certainty, without substantial injury, is preferable to constant change. But, independent of these considerations, we

think there are other and substantial defects in this case, that must reverse it.

By the act under which this vote was taken, the returns were to be canvassed and entered, "under the same rules and restrictions as in other elections." The law regulating other elections, provides as follows: "Section 273. The person having the greatest number of votes for any office, is to be declared elected. Section 274. Each of the abstracts shall be signed by the county judge and justices, in their official capacity, and as county canvassers, and have the county seal affixed. Section 275. Each abstract of the votes for such officers as the county alone elects, shall contain a declaration of whom the canvassers determine is elected." And a previous section requires the county judge, to take to his assistance two justices of the peace of his county, and that they together shall open and examine the several returns and make abstracts. By these rules and restrictions, to say nothing of others, these canvassers were to be governed in canvassing this vote.. The information admits, that they did proceed to canvass the returns made, but alleges, that returns from certain townships, were improperly excluded. Grant that they were, and how does the case stand? To determine this, let us look to the Code, to see when this writ may issue, to whom, and for what purpose. Section 2179 provides, that "The writ of mandamus issues from the District Court to any inferior tribunal, corporation, board, or person, to compel the performance of an act, which the law specially enjoins, as a duty resulting from an office, trust, or station." What duty did the law "especially enjoin" on the county judge, sheriff, and other county officers, in relation to this removal? To remove their offices, books, papers, &c., belonging thereto, to Sigourney, it is said. This is true; but when, and upon what condition? Clearly, if a majority of the votes cast at said election, was in favor of said removal; otherwise, not. Who was to determine, in the first instance, which place had a majority? Unquestionably, the county canvassers, and not the county officers. At the time the alternative writ was

granted, what had the sheriff, recorder, and clerk, to say nothing of the county judge, refused to do, to justify this mandate? Was it their duty to act in direct violation of the determination of the canvassers? Certainly not. Indeed, it appears to us, that as matters then stood, they were in the clear discharge of their duties, in remaining at Lancaster. The law did not enjoin upon them to canvass the votes, nor yet to act in disregard of that canvass, because they, or any other citizen or citizens, might deem the canvass ever so flagrantly illegal and erroneous. This writ should not issue, until there is some wrong on the part of the tribunal, corporation, board, or person, to be commanded. By this, we do not mean an act criminal in its character, but that the party to be compelled, should have failed and refused to do that which it was clearly and certainly his duty to do, from his office, trust, or station. They could not determine, then, that this canvass was wrong. It was no part of their duty to do so, and to command them to so remove their offices, while the vote stood in this condition, was clearly unwarranted and erroneous. It may be said, however, that the writ and information were amended, so as to make the county canvassers parties, and that the alternative writ, as thus amended, commanded them to correct that canvass; and that, in this respect, the peremptory writ follows the alternative. But is this so? The amendment directs the mandate to the county judge and canvassers, and commands them to count the votes of all the townships, and record the true result of said vote. The order for the peremptory writ is, that the " county judge is to so amend his record, as to show the true state of the majority vote for the town of Sigourney," and for him and the other county officers to remove to Sigourney, on the 15th day of March, 1856. It is not easily perceived, how the county judge could be commanded to amend his record, until either in connection with the former assistants, or others, to be selected, or in some other method, the returns had been reexamined, and the result declared, so that the judge could make his amendment therefrom. The county judge has not

alone, any power to make this examination.   He makes the
entry on his books, it is true, but it is only after the can-
vassers have determined the result, and, as a board, made
the abstracts.    Whether their duties are judicial, or exclu-
sively ministerial, there must be the action of the three in
making the canvass.

But, further, the record shows, that the peremptory writ
was ordered, without any other evidence or record, than
that contained in the information, writ, answer, and demurrer.
How, then, was it shown that this canvass was improper?
Certainly not upon the face of the pleadings.   Or, if the
order commanding the county judge to correct his record,
was designed to require a new canvass, and to have the
correct result declared, then how is it left?   Suppose that on
such second canvass, a majority of the votes should still be
found in favor of Lancaster?   In that event, we would have
this singular state of things:   An absolute peremptory man-
date to the county officers to remove their offices on a definite
day, while the vote, as canvassed, might show that under the
law, there should have been no removal.   In any view of it,
then, it appears to us, this peremptory writ was unwarranted,
from anything that is developed in this record.

Very great injustice may have been done by the first can-
vass.   If so, we have no doubt, but that the writ of manda-
mus could properly issue to compel the board to correct the
mistake, and do their duty.   And upon such correction, if
the majority was in favor of Sigourney, it is just as clear,
that upon a failure of the county officers to remove, they
could be compelled to do so by mandamus.  While we would
not say, that the alternative writ might not issue, command-
ing the board of canvassers to correct the canvass, and upon
such correction, commanding the county officers to remove
their offices; yet, we think, the better practice would be, to
first compel the board to act, so as to correct the canvass.
When this has been done, and the duty of the county officers
clearly fixed, so that their duty can be said to be "specially
enjoined," and they refuse, then let the mandate of the court
issue, commanding them to act.   And less objection, it is

believed, obtains to this course, from the fact, that the law contemplates speedy action. The defendants may be required to answer forthwith. The very nature of the writ, carries with it the necessity of prompt and decisive action on the part of the court. By pursuing this course, confusion will be avoided, and each tribunal, and officer, held liable for their own action ; for their own contempts, and their own costs; and this too, it is believed, without any prejudice to the rights of the relators.

Judgment reversed and cause remanded.